22-901
*In re AMR Corp.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of March, two thousand twenty-three.

PRESENT:

> DENNY CHIN,
> RICHARD J. SULLIVAN,
> MYRNA PÉREZ,
> *Circuit Judges.*

_____

IN RE: AMR CORPORATION,

> *Debtor.*

_____

CAROLYN FJORD, KATHERINE R. ARCELL, KEITH DEAN BRADT, JUDY BRAY, JOSE M. BRITO, JAN MARIE BROWN, ROBERT D. CONWAY, JUDY CRANDALL, ROSEMARY D'AUGUSTA, BRENDA K. DAVIS, PAMELA FAUST, DON FREELAND, DONALD V. FRY, GABRIEL GARAVANIAN, HARRY GARAVANIAN, YVONNE JOCELYN GARDNER, LEE M. GENTRY, VALARIE ANN JOLLY, GAIL S. KOSACH, MICHAEL C. MALANEY, LEN MARAZZO, LISA

McCarthy, Patricia Ann Meeuwsen, L. West Oehmig, Jr., Cynthia Prosterman, Deborah M. Pulfer, Dana L. Robinson, Robert A. Rosenthal, Bill Rubinsohn, Sondra K. Russell, Sylvia N. Sparks, June Stansbury, Clyde D. Stensrud, Wayne Taleff, Gary Talewsky, Annette M. Tippetts, Diana Lynn Ultican, J. Michael Walker, Pamela S. Ward, Christine O. Whalen,

        *Appellants,*

        v.

AMR Corporation,

        *Debtor-Appellee,*

American Airlines Group Inc.,

        *Appellee.*

No. 22-901

_____

| | |
|---|---|
| **For Appellants:** | Joseph M. Alioto, Sr., Alioto Law Firm, San Francisco, CA (Tatiana V. Wallace, Alioto Law Firm, San Francisco, CA; Theresa D. Moore, Law Offices of Theresa D. Moore, PC, San Francisco, CA; Christopher Nedeau, Nedeau Law Firm, San Francisco, CA; Lawrence G. Papale, Law Offices of Lawrence G. Papale, St. Helena, CA, *on the brief*). |
| **For Debtor-Appellee and Appellee:** | Daniel Wall (Sadik Huseny, Aaron Chiu, Brittany N. Lovejoy, Robin L. Gushman, *on the brief*), Latham & Watkins LLP, San Francisco, CA. |

Appeal from an order of the United States District Court for the Southern District of New York (Katherine Polk Failla, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Plaintiffs – a group of consumers and travel agents who challenged the 2013 merger of American Airlines and US Airways on antitrust grounds – appeal from the district court's affirmance of the orders of the bankruptcy court (Sean H. Lane, *Bankruptcy Judge*) (1) denying after a bench trial Plaintiffs' claims for injunctive relief under Sections 7 and 16 of the Clayton Act, 15 U.S.C. §§ 18, 26; and (2) denying Plaintiffs' motions for leave to amend their complaint to add a damages claim and jury demand pursuant to Section 4 of the Clayton Act, *id.* § 15. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

"We exercise plenary review over a district court's affirmance of a bankruptcy court's decision, reviewing de novo the bankruptcy court's conclusions of law, and reviewing its findings of fact for clear error." *In re Lehman Bros. Inc.*, 808 F.3d 942, 946 (2d Cir. 2015) (internal quotation marks omitted).

Furthermore, we generally review the denial of leave to file an amended complaint for abuse of discretion, but where the determination is based upon a legal interpretation, de novo review is appropriate. *See Mortimer v. Off Shore Servs., Ltd. v. Federal Republic of Germany*, 615 F.3d 97, 114 (2d Cir. 2010); *see also Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185–86 (2d Cir. 2012).

## I. Legal Framework for Section 7 Claim

On appeal, Plaintiffs primarily contend that, in determining whether the airline merger violated Section 7 of the Clayton Act, the bankruptcy court legally erred by applying a burden-shifting framework that treated Plaintiffs' assertion of post-merger market share as prima-facie evidence of a Section 7 violation but permitted Defendants to produce other evidence to show that the merger would not in fact have anticompetitive effects. According to Plaintiffs, the bankruptcy court was instead obliged by Supreme Court precedent from the 1960s to treat post-merger market share as virtually conclusive of a Section 7 violation. For substantially the same reasons contained in the district court's thorough and well-reasoned opinion, we reject Plaintiffs' view of the relevant case law and conclude that the bankruptcy court properly analyzed (and dismissed) Plaintiffs' claim predicated on a Section 7 violation.

4

A merger between two companies violates Section 7 if "in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such [merger] may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18. To be sure, when interpreting this provision in the 1960s, the Supreme Court seemed to accept post-merger market share as essentially irrebuttable proof of market power, and thus of a Section 7 violation – even while noting in passing the need to consider all relevant evidence to evaluate likely competitive effects. *See, e.g.*, *Brown Shoe Co. v. United States*, 370 U.S. 294, 338–46 (1962); *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 362–72 (1963); *United States v. Von's Grocery Co.*, 384 U.S. 270, 275–79 (1966). But in the 1970s, the Supreme Court began to apply a more nuanced and text-based interpretation of Section 7, refusing to blindly equate a substantial increase in market share with a likely substantial decrease in competition and instead requiring more careful consideration of a Section 7 defendant's rebuttal evidence. In *United States v. General Dynamics Corp.*, the Court affirmed a district court's determination that Section 7 defendants had successfully rebutted the government's prima-facie case by demonstrating unique economic circumstances that undermined the predictive value of the government's industry-concentration and market-share statistics.

5

415 U.S. 486, 497–504 (1974). In so doing, the Court specifically reiterated that "statistics concerning market share and concentration, while of great significance, [are] not conclusive indicators of anticompetitive effects." *Id.* at 498 (discussing *Brown Shoe*); *see also United States v. Marine Bancorporation, Inc.*, 418 U.S. 602, 631 (1974); *United States v. Citizens & S. Nat'l Bank*, 422 U.S. 86, 120–22 (1975).

Since then, numerous circuits have followed the Supreme Court's lead and adopted burden-shifting frameworks similar to the one employed by the bankruptcy court here. For example, the D.C. Circuit has held that, after a plaintiff has shown "that a transaction will lead to undue concentration in the market for a particular product in a particular geographic area," defendants must be permitted to proffer rebuttal evidence to either "discredit[] the data underlying the initial presumption" or "affirmatively show[] why a given transaction is unlikely to substantially lessen competition," whereupon "the burden of producing additional evidence of anticompetitive effect shifts" back to the plaintiff "and merges with the ultimate burden of persuasion." *United States v. Baker Hughes Inc.*, 908 F.2d 981, 982–83, 991 (D.C. Cir. 1990) (Thomas, J., joined by Ginsburg, J.); *see also id.* at 984–85, 989–92 ("The Supreme Court has adopted a totality-of-the-circumstances approach to the statute, weighing a variety of factors

to determine the effects of particular transactions on competition."). Indeed, the D.C. Circuit is hardly unique in reading Supreme Court case law as requiring such an approach. *See, e.g.*, *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 703–04 (4th Cir. 2021); *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 337 (3d Cir. 2016); *Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 783 (9th Cir. 2015); *ProMedica Health Sys., Inc. v. FTC*, 749 F.3d 559, 568–72 (6th Cir. 2014); *Chi. Bridge & Iron Co. v. FTC*, 534 F.3d 410, 423–26 (5th Cir. 2008); *FTC v. Univ. Health, Inc.*, 938 F.2d 1206, 1218–19 (11th Cir. 1991); *Kaiser Aluminum & Chem. Corp. v. FTC*, 652 F.2d 1324, 1333–40 (7th Cir. 1981).[1]

In this Circuit, even before *Baker Hughes*, we have rejected Plaintiffs' rigid interpretation of Section 7 in favor of a more nuanced burden-shifting framework that allows defendants to rebut the contention that increased market share necessarily reflects "lessen[ed] competition." 15 U.S.C. § 18. In *Broadway*

---

[1] Plaintiffs rely almost exclusively on the Seventh Circuit's decision in *Hospital Corp. of America v. FTC* to argue that the Supreme Court cases from the 1960s have not been overruled or undermined. 807 F.2d 1381 (7th Cir. 1986). But while *Hospital Corp. of America* acknowledged that "it can be argued that [*General Dynamics* and *Citizens & Southern National Bank*] themselves carve only limited exceptions to the broad holding of some of the merger decisions of the 1960s," *id.* at 1385–86, it ultimately concluded that "doubt [has been cast] on the continued vitality of such cases as *Brown Shoe* and *Von's*," since "the Supreme Court . . . has said repeatedly that the economic concept of competition, rather than any desire to preserve rivals as such, is the lodestar that shall guide the contemporary application of antitrust laws, not excluding the Clayton Act." *Id.* at 1386.

*Delivery Corp. v. United Parcel Service of America* – involving the very lawyers representing Plaintiffs here – we explained that "[i]n more recent decisions in the merger context, the [Supreme] Court has reaffirmed its unwillingness to base market[-]power determinations simply on market[-]share data, preferring to treat market share as strong, perhaps presumptive, evidence of the presence or absence of market power, subject to bolstering or rebuttal by other evidence."  651 F.2d 122, 128 (2d Cir. 1981) (discussing *General Dynamics*, *Marine Bancorporation*, and *Citizens & Southern National Bank*); *see also Fruehauf Corp. v. FTC*, 603 F.2d 345, 352– 53 (2d Cir. 1979).  Similarly, in *United States v. Waste Management, Inc.*, we faithfully applied the logic in Supreme Court cases such as *Philadelphia National Bank* and *General Dynamics* to hold that a Section 7 defendant had successfully rebutted the government's prima-facie case by showing that the barriers to entry in the relevant market were low, thereby limiting the likelihood of supracompetitive pricing in the future.  743 F.2d 976, 981–84 (2d Cir. 1984); *see also, e.g.*, *R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 107–08 (2d Cir. 1989).  In any event, even if we disagreed with these Second Circuit cases' interpretation of Supreme Court doctrine (which we do not), absent intervening Supreme Court

8

precedent, we as a panel are bound to follow them.  *See Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 405 (2d Cir. 2014).

In short, given the robust case law in both our Circuit and our sister circuits – caselaw that is completely consistent with the last word from the Supreme Court – we cannot say that the bankruptcy court committed legal error *merely by considering* Defendants' rebuttal evidence showing why the market-share data in fact gave an inaccurate account of the merger's probable effects on competition.   And because Plaintiffs mount no other meaningful challenges, legal or factual, to the bankruptcy court's burden-shifting analysis, we affirm the bankruptcy court's Section 7 determination.[2]   Simply put, assertions of enhanced market share and increased concentration "cannot guarantee litigation victories." *Baker Hughes*, 908 F.2d at 992.

---

[2] Plaintiffs also criticize the bankruptcy court for citing the Department of Justice's Horizontal Merger Guidelines.   *See* Dep't of Just. & Fed. Trade Comm'n, Horizontal Merger Guidelines (Aug. 19, 2010).   But the bankruptcy court specifically noted that the Guidelines were not binding and that it was consulting them only as a "helpful tool," Supp. App'x at 193 n.23 (internal quotation marks omitted) – as courts have repeatedly deemed appropriate.   *See, e.g., United States v. Anthem, Inc.*, 855 F.3d 345, 349 (D.C. Cir. 2017); *United States v. Apple, Inc.*, 791 F.3d 290, 328 n.21 (2d Cir. 2015); *United States v. Kinder*, 64 F.3d 757, 771 & n.22 (2d Cir. 1995) (Leval, J., dissenting).

## II. Motion to Add Section 4 Claim

Like the district court, we also conclude that the bankruptcy court did not abuse its discretion when it denied Plaintiffs' January 2019 motion for leave to amend the operative complaint to add a claim for treble damages pursuant to Section 4 of the Clayton Act and a corresponding demand for a jury trial. Although Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend the complaint] when justice so requires," Fed. R. Civ. P. 15(a)(2); *see also* Fed. R. Bankr. P. 7015, the bankruptcy court "has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *see also Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir. 1998).

Applying these principles, the bankruptcy court denied Plaintiffs' January 2019 motion, finding both that Plaintiffs unduly delayed the filing of that motion and that Defendants would be unduly prejudiced if the court granted that motion. As Plaintiffs' motion was made about *two years* after the close of discovery, *five months* after the district court's summary judgment ruling, and just *two months* before trial, we cannot say that the bankruptcy court's determination was an abuse

10

of discretion. *See, e.g., Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995) (affirming denial of motion to amend filed two-and-a-half years after the filing of an action and three months before trial); *Brown v. Fisher*, 486 F. App'x 959, 960 (2d Cir. 2012) (affirming denial of motion to amend filed a year after discovery closed and eight months after summary-judgment motions were filed); *State Farm Ins. Cos. v. Kop-Coat, Inc.*, 183 F. App'x 36, 38 (2d Cir. 2006) (affirming denial of motion to amend filed almost one year after the close of discovery and five months after the district court's summary-judgment ruling).

Plaintiffs' arguments to the contrary are unavailing. As to undue prejudice, Plaintiffs contend that the bankruptcy court erred by failing to weigh the prejudice *they* would suffer by being deprived their Seventh Amendment right to try a claim for damages pursuant to Section 4 before a jury. *See* Plaintiffs Br. at 22–26 (citing *Beacon Theatres v. Westover*, 359 U.S. 500 (1959); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979)). Plaintiffs, however, seem to misunderstand that, under Rule 15, courts have the "discretion to deny leave" on the basis of "undue prejudice *to the opposing party*," *McCarthy*, 482 F.3d at 200 (emphasis added); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962), regardless of whether a motion seeks to add a claim that would permit a jury trial, *see Perkins v. Spivey*, 911 F.2d 22, 34

11

(8th Cir. 1990); *Earlie v. Jacobs*, 745 F.2d 342, 345 (5th Cir. 1984); *cf. Italian Star Line v. U.S. Shipping Bd. Emergency Fleet Corp.*, 53 F.2d 359, 360 (2d Cir. 1931) ("There is no violation of the right to trial by jury in dismissing a complaint for failure to establish a cause of action."). As to undue delay, Plaintiffs suggest that the timing of their 2019 motion was appropriate because the bankruptcy court denied earlier motions for leave to amend, before purportedly reversing course on the relevant legal issue in its summary-judgment decision. But even if we assume that the summary-judgment decision provided a new basis on which to amend the complaint, the bankruptcy court was justified in finding that Plaintiffs' five-month delay between the summary-judgment decision and the motion to amend was in and of itself unreasonable.[3]

---

[3] To the extent that Plaintiffs also challenge the bankruptcy court's earlier denials of their motions to amend, we decline to consider those challenges, as Plaintiffs have presented no developed argument on appeal for why the earlier denials – which rested on distinct legal grounds – were in error. *See Gross v. Rell*, 585 F.3d 72, 95 (2d Cir. 2009). Additionally, we do not consider Plaintiffs' assertions made in passing that the bankruptcy court erred (1) by defining the relevant geographic market in terms of city pairs for Plaintiffs' Section 7 claim and (2) by granting summary judgment to Defendants on Plaintiffs' claim that a severance payment violated Section 2(c) of the Robinson-Patman Act, 15 U.S.C. § 13(c). Plaintiffs doubly forfeited those assertions by failing to present developed legal arguments both to the district court, *see In re Klein Sleep Prods., Inc.*, 78 F.3d 18, 29 (2d Cir. 1996), and to us, *see Gross*, 585 F.3d at 95.

\*   \*   \*

We have considered Plaintiffs' remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court